**Charles Andrew MESSER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 570–84.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 17, 1986.

On Rehearing April 1, 1987.

Don Ervin, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. & Calvin A. Hartmann & Wilford Anderson, William J. Delmore, III, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. & Cathleen R. Riedel, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was convicted by the trial court of possession of cocaine. Punishment was assessed at three years imprisonment. On appeal to the First Court of Appeals, appellant's conviction was affirmed in an unpublished opinion. *Messer v. State*, No. 01–83–0312–CR, (Tex.App.— Houston [1st], delivered March 8, 1986). We granted appellant's petition for discretionary review to determine whether the court of appeals was correct in holding that there was sufficient evidence to support the guilty verdict. We will reverse.

The record indicates that on May 4, 1982, appellant was arrested as he was entering his office building and was taken by the arresting officers to his residence. A black camera case was taken from appellant at the time of the arrest. Appellant told the officers that the case contained a pistol and some cocaine. The officers searched the case and, pursuant to a search warrant, searched appellant's apartment.

Appellant waived his right to a jury trial and entered into a stipulation with the State wherein both sides agreed that if the State were to call its witnesses, they would testify to the facts contained in the offense report. The stipulation was signed by appellant, his attorney, and the assistant district attorney. The stipulation was not, however, approved and signed by the trial court.

Appellant argues that since the stipulation was not signed by the trial court, it may not be considered as evidence. Thus, there is no evidence to prove the substance was cocaine. In response the State relies on a statement made by appellant at the time he was arrested to show that his bag contained cocaine. The only place in the record where any statement made by appellant is found is in the offense report, which states:

"At the time of the arrest, the suspect was carrying a black vinyl camera case which was taken possession of by this Det. When we were leaving the parking lot of the aforementioned location, the suspect stated that he had a pistol and some cocaine in the bag."

Article 1.15, V.A.C.C.P., provides that in order for a stipulation to be valid, the defendant's consent and waiver of rights must be approved by the court in writing. This provision has been interpreted to require that the judge's signature appear on the stipulation. *Lopez v. State*, 708 S.W.2d 446 (Tex.Cr.App.1986); *Clark v. State*, 657 S.W.2d 121 (Tex.Cr.App.1983); *Ellard v. State*, 650 S.W.2d 840 (Tex.Cr.App.1983); *Young v. State*, 648 S.W.2d 6 (Tex.Cr.App. 1983).

For example, in *Clark*, supra, the defendant was charged with possession of more than four ounces of marijuana. One officer testified in court that the substance was indeed marijuana. The parties stipulated that a second officer would testify that the amount exceeded four ounces. The stipulation was not signed by the trial court, and this Court held there was no evidence of the amount of marijuana.

In *Lopez*, supra, a similar case, the defendant was charged with possession of heroin. The parties stipulated that the officer would testify that the substance was indeed heroin. The trial court did not sign the stipulation and the State offered no other evidence to prove the substance was heroin. This Court held that there was insufficient evidence to show that the defendant was guilty.

The instant case presents a fact pattern nearly identical to those in *Clark*, supra, and *Lopez*, supra. Appellant and the State stipulated that the officer's testimony would contain the same information as the offense report. The offense report was virtually incorporated into and made a part of the stipulation of evidence. The offense report contained appellant's statement that there was cocaine in his case. The trial court did not sign the stipulation so the offense report may not be considered as evidence in this case, under the authority of the preceding cases.

The State offered no other evidence that appellant was guilty of possession of cocaine. Therefore, there was insufficient

evidence to show that appellant was guilty of the offense with which he was charged.

The State makes three contentions in support of its position. First, regardless of the defective stipulation, the trial court could consider the contents of the offense report, to wit: appellant's statement, the visual inspection and field test of the cocaine performed by the officers at the scene, and the array of contraband found in appellant's apartment. This argument is unpersuasive. As previously stated, the offense report, though a separate exhibit from the written agreement to stipulate, was in fact the evidence that was stipulated. To contend that it was admitted into evidence on its own, separate and apart from the agreement to stipulate, flies in the face of the record before us.

The State's second contention is that appellant failed to object to the stipulation when it was offered. This Court has held that a stipulation of evidence without the trial court's signature constitutes fundamental error and may be raised for the first time on appeal. *Lopez*, supra.

The State's third contention is that appellant's statement is direct evidence that the substance in his bag was cocaine. The State is correct in its assertion that a statement concerning the nature of a substance made by someone with personal knowledge is direct evidence of the nature of the substance, as was held in *Pesina v. State*, 560 S.W.2d 97 (Tex.Cr.App.1978); and *Bright v. State*, 556 S.W.2d 317 (Tex.Cr.App.1977).

In *Pesina*, supra, the defendant took the stand and admitted that the substance found in his possession was heroin. This Court held the defendant's testimony provided sufficient evidence to support a guilty verdict, and there was no requirement that a chemist testify or that a lab report be admitted into evidence.

In *Bright*, supra, the defendant was in the Coulson home when he was arrested. Coulson testified that the defendant had heroin with him while he was there. This Court held that Coulson's statement that the defendant had heroin was admissible as a statement of fact within the knowledge of the witness. If the defendant had told Coulson that the substance was heroin, Coulson's testimony would have been direct evidence of the nature of the substance.

In the case at bar the issue of whether appellant's statement was direct evidence that the substance in his bag was cocaine is never reached because, unlike *Pesina*, supra, and *Bright*, supra, appellant's statement was never properly admitted into evidence.

In conclusion, we find the following: (1) the stipulation of evidence and everything it contains, specifically the offense report, may not be considered as evidence; (2) appellant did not waive the error in the stipulation by failing to object to it at trial; and (3) we never reach the issue of whether appellant's statement is direct evidence that his bag contained cocaine because it was never properly admitted into evidence.

The judgments of the court of appeals and the trial court are reversed. This cause is remanded to the trial court for entry of judgment of acquittal.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

ONION, Presiding Judge.

Appellant was convicted in a bench trial of possession of cocaine upon his plea of not guilty before the court. His punishment was assessed by the court at three years' imprisonment.

The record shows that following a hearing on appellant's motion to suppress evidence the appellant waived trial by jury and entered his plea of not guilty. The evidence was "stipulated" and the appellant was found guilty. The judgment of conviction was entered.

On appeal the sole point (nee ground) of error was that the "evidence is insufficient to establish beyond a reasonable doubt that the substance recovered from the appellant was in fact cocaine, as alleged in the indictment."

The argument in support of the appellant's contention was that the State had failed to offer a chemist's testimony that

the substance was cocaine or even a laboratory report reflecting that the substance submitted to the chemist tested as cocaine.

The Court of Appeals observed in its unpublished opinion that the stipulated evidence before the trial court in the form of an offense report showed that appellant, at the time of his arrest, told the arresting officers that the camera case or bag he had with him contained a pistol and cocaine. Approximately 20 grams of white powder was recovered from the bag. The tests were performed on the suspected narcotics with positive results. These tests included the cocaine found in the bag. The Court of Appeals found that the field tests were not sufficient in themselves to establish the nature of the substance, but the positive results of such tests tended to confirm the direct evidence in the form of appellant's admission that the substance was cocaine. Citing *Girard v. State*, 631 S.W.2d 162 (Tex.Cr.App.1982), the Court of Appeals, viewing the evidence in the light most favorable to the judgment, concluded that a rational trier of fact could have found all essentials of the offense proven beyond a reasonable doubt because the question of sufficiency is determined by the combined weight of all incriminating evidence. *Messer v. State* (Tex.App.-Houston [1st Dist.] March 8, 1984—unpublished).

In appellant's petition for discretionary review the sole ground of review was that the Court of Appeals erred because there was "insufficient evidence of probative value in the record to establish beyond a reasonable doubt that the substance recovered from the appellant was in fact cocaine, as alleged in the indictment."

Under his reasons for review, appellant urges that in absence of a chemical analysis or laboratory report the evidence was insufficient to sustain the conviction, citing *Wagoner v. State*, 557 S.W.2d 114 (Tex.Cr.App.1977). In addition, for the first time appellant urges a matter not presented to the Court of Appeals. He contends the stipulated evidence was not in compliance with the mandatory requirements of Article 1.15, V.A.C.C.P., which requires that the stipulation before the court is not a

proper method of proof "until the trial judge places his signature on it."

We granted appellant's petition to determine the correctness of the Court of Appeals' judgment in light of appellant's argument.

On original submission this Court reversed the judgment of the Court of Appeals, finding that the stipulated evidence did not meet the requirements of Article 1.15, supra, and ordered an acquittal. See *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

We granted the State's motion for leave to file a motion for rehearing in which the State urged that our opinion on original submission was in irreconcilable conflict with *Ex parte Duran*, 581 S.W.2d 683 (Tex.Cr.App.1979), holding that the failure to comply with Article 1.15, supra, was trial error rather than failure to produce sufficient evidence to sustain the conviction so as to bar a retrial because of the Double Jeopardy Clause. See *Burks*, supra; *Greene*, supra. The State also urged that our opinion on original submission erroneously indicated that the trial judge's signature must appear on the stipulation itself as approval thereof, when Article 1.15, supra, requires the trial judge to sign and approve the "waiver of rights and consent to stipulate" form, not sign the stipulation of evidence itself which could in fact under the statute be oral.

Article 1.15, supra, provides:

"No person can be convicted of a felony except upon the verdict of a jury duly rendered and recorded, unless in felony cases less than capital, the defendant, upon entering a plea, has in open court in person waived his right of trial by jury in writing in accordance with Articles 1.13 and 1.14; provided, however, that it shall be necessary for the state to introduce evidence into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment and in no event shall a person charged be convicted upon his plea without sufficient evidence to

support the same. The evidence may be stipulated if the defendant in such case consents in writing, in open court, to waive the appearance, confrontation, and cross-examination of witnesses, and further consents either to an oral stipulation of the evidence and testimony or to the introduction of testimony by affidavits, written statements of witnesses, and any other documentary evidence in support of the judgment of the court. *Such waiver and consent must be approved by the court in writing, and be filed in the file of the papers of the cause."* (Emphasis supplied.)

█ The foregoing statute is mandatory and must be followed for a stipulation to be considered as evidence where the plea is before the court. See *Young v. State*, 648 S.W.2d 6 (Tex.Cr.App.1983); *Valdez v. State*, 555 S.W.2d 463 (Tex.Cr.App.1977); *Duran v. State*, 552 S.W.2d 840, 843 (Tex. Cr.App.1977), and cases there cited. See also *Green v. State*, 666 S.W.2d 291 (Tex. App.-Houston [14th Dist.] 1984). And it is quite true that the statute has always had application to a plea of not guilty entered before the court where a jury trial has been waived. *Rodriguez v. State*, 442 S.W.2d 376 (Tex.Cr.App.1968); *Thornton v. State*, 601 S.W.2d 340 (Tex.Cr.App.1979).

█ Further, as the State correctly argues, it is not the stipulation itself that must be approved in writing by the trial court but the defendant's waiver of his rights and consent to stipulate. Only recently in *Landers v. State*, 720 S.W.2d 538, 540 (Tex.Cr.App.1986), this Court wrote:

"What appellant overlooks is that Article 1.15 requires that before stipulated evidence may be permitted in any plea before the court in a felony case the written waiver by the defendant of appearance, confrontation and cross-examination of witnesses and his consent to stipulation of evidence must be approved by the trial court, not the stipulation itself. A stipulation may be oral under Article 1.15, supra. An oral stipulation cannot be signed and approved by the trial court. The trial court is not required to examine each piece of stipulated evidence, oral or written, sign and approve it before introduction. The statute only requires that the defendant's waiver and consent to stipulate evidence be signed and approved by the trial court." [1]

The scenario in the instant case is all too familiar to appellate courts, particularly in the appeals from Harris County. There is a brief hearing on the motion to suppress evidence, which motion is subsequently overruled. The defendant then immediately waives trial by jury and enters a plea of not guilty before the court and the evidence is stipulated in forms of an exhibit or exhibits. No "live" testimony is offered. The defendant is promptly found guilty. On appeal it is urged that there was a failure to comply with the mandatory provisions of Article 1.15, supra, to which too little attention at trial is given.

In the instant case there was a printed form entitled somewhat misleadingly "Stipulation of Evidence." (State's Exhibit No. 2) In said form the appellant waived the appearance, confrontation and cross-examination of witnesses and consented to the oral and written stipulation of evidence. The appellant further agreed that if the State called witnesses they would testify as set forth in the offense report (State's Exhibit No. 1) and that he was the one and same person described in State's Exhibit No. 1 to be admitted. The form was signed and sworn to by the appellant. It was also approved in writing by his counsel and the assistant district attorney. The space in the form for the trial judge's approval was left blank. It was not signed.

At the trial after the not guilty plea the State informed the court the evidence

---

1. Regrettably, loose language indicating that it is the stipulation itself which must be signed and approved has crept into the courtroom language, appellate briefs and even into appellate court opinions. See, e.g., *Lopez v. State*, 708 S.W.2d 446 (Tex.Cr.App.1986); *Clark v. State*, 657 S.W.2d 121 (Tex.Cr.App.1983); *Young v. State*, 648 S.W.2d 6 (Tex.Cr.App.1983); *Terry v. State*, 681 S.W.2d 136 (Tex.App.—Houston [14th Dist.] 1984); *Green v. State*, 666 S.W.2d 291 (Tex.App.—Houston [14th Dist.] 1984). See footnote # 3, *Landers v. State*, supra, at p. 540.

would be stipulated, and asked if the appellant was agreeable to being questioned. His attorney stated, "No objection." After being sworn, the appellant was simply asked to identify his signature on State's Exhibit No. 2 and asked if he understood the stipulation procedure and had agreed to have "that done." Upon receiving an affirmative answer[2] State's Exhibit Nos. 1 and 2 were offered into evidence. Appellant's counsel offered no objection except to observe that all rights to appeal the ruling on the motion to suppress were being reserved. The exhibits were expressly admitted by the trial judge into evidence. Both sides then rested and closed.

*Stipulations,* oral or written, in criminal cases where the plea of not guilty is entered *before the jury do not have to comply with Article 1.15, V.A.C.C.P.* The stipulations entered in the instant case where the plea was not guilty to the indictment were entered before the court met all the requirements of Article 1.15, supra, except the approval in writing by the court of the appellant's waiver of his rights and his consent to the stipulation of evidence. Appellant does not contend, even now, that he did not waive his rights or consent to stipulate the evidence, or that the trial judge did not orally accept and admit into evidence the stipulations and exhibits. He complains now, only belatedly, before this court that the trial judge's signature is missing.

The history of Article 1.15, V.A.C.C.P., as originally enacted in 1965, was traced in the original dissenting opinion in *Rodriguez v. State,* supra, 442 S.W.2d at pp. 379–383. One of the sources of Article 1.15, supra, was former Article 12, V.A.C.C.P. (1925), as amended (Acts 1931, 42nd Leg., p. 65, ch. 43, § 8), which permitted for the first time a plea of guilty before the court in a non-capital felony case. Until 1931 all felony cases were tried before a jury regardless of the plea.

The procedure required by Article 1.15, supra, is perhaps unique to Texas. Although originally designed for applications to pleas of guilty and nolo contendere before the court in non-capital felony cases, the statute by its very terms also applies to pleas of not guilty before the court in such cases. *Rodriguez v. State,* supra. The wisdom of the continuation of such requirements, at least as to not guilty pleas, is for the Legislature and not this Court.

■ The question before this Court is whether the absence of the trial judge's signature approving the waiver and consent calls for an acquittal under *Burks,* supra, and *Greene,* supra. What then, are the double jeopardy implications of a reversal by an appellate court of a conviction that was supported only by inadmissible evidence (in this case stipulations orally admitted into evidence by the judge without his written approval of the appellant's duly executed waiver of the appearance, confrontation, and cross-examination of witnesses and his written consent to stipulate evidence and the introduction of written statements)?

*Ex parte Duran,* 581 S.W.2d 683 (Tex. Cr.App.1979), involved a plea of guilty before the court where the evidence was stipulated without the defendant having executed a written waiver of his rights and consent to stipulate the evidence.

In *Ex parte Duran,* supra, at p. 684, the Court wrote:

> "*Burks* held that 'the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient, [and] the only "just" remedy available for that court is the direction of a judgment of acquittal.' 437 U.S. at 18, 98 S.Ct. at 2150. The Supreme Court was careful to distinguish reversals caused by trial error from those resulting from evidentiary insufficiency.
>
> " 'In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a

---

2. The appellant was not further interrogated by the prosecutor or his own counsel.

defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.' 437 U.S. at 15, 98 S.Ct. at 2149.

Therefore, reversal for trial error does not preclude another trial.[3]

\* \* \* \* \* \*

"This situation is different from that presented in *Burks*, in which the trial court's error was in failing to grant a motion for new trial which was based on insufficiency of the evidence. In the applicant's case, the basic error was not failure to recognize, after the State had rested, that the evidence was insufficient; it was error in admitting evidence. We think that this basic error, upon which our earlier reversal rested, was therefore trial error. Properly construed, our holding was not that the State had failed to prove its case, but that it had been permitted erroneously to prove its case through incorrect receipt of evidence. Cf. *Burks*, 437 U.S. at 15, 98 S.Ct. 2141, quoted above. A reversal for such trial error as was committed in this case is not tantamount to a holding by this Court that a directed judgment of acquittal should have been entered. It was a holding that the applicant should have a fair readjudication of his guilt free from error. For this reason, our earlier reversal was not one that would bar a re-trial because of the application of the double jeopardy clause in *Burks* and *Greene*." See also *Clark v. State*, 657 S.W.2d 121, 122 (Tex.Cr.App.1983).

In the instant case we conclude that the basic error was not proceeding to enter a judgment of conviction because of evidentiary insufficiency but error in admitting the stipulation without the written approval of the trial judge as to the appellant's waiver of rights and consent to stipulate evidence. This was trial error and does not call for an acquittal. Although *Ex parte Duran*, supra, involved a plea of guilty and the instant case involved a plea of not guilty before the court, we adhere to the holding in *Duran*.

In view of the trial error, the judgments of the Court of Appeals and the trial court are reversed and the cause remanded to the trial court.[4]

CLINTON, Judge, dissenting on appellant's petition for discretionary review.

In ordering an acquittal on original submission in this cause a unanimous Court was right the first time. To its remand for concocted "trial error," I respectfully dissent.

The majority opinion relies solely on rote application of *Ex parte Duran*, 581 S.W.2d 683 (Tex.Cr.App.1979). As I have reported elsewhere *Ex parte Duran* is "probably the first explication of that notion of '*trial error*'." *Ex parte Aaron*, 691 S.W.2d 680 (Tex.Cr.App.1985) (Concurring Opinion, at 685, n. 1).[1] Certainly none of its progeny has ever revisited purported rationale of *Ex parte Duran*. See, e.g., *Clark v. State*, 657 S.W.2d 121 (Tex.Cr.App.1983). One who does will discern that *Ex parte Duran* was wrongly decided.

In *Duran v. State*, 552 S.W.2d 840 (Tex.Cr.App.1977), after a bench trial on a plea of not guilty, it was contended on appeal that evidence was insufficient to show a powdered substance possessed by defendant was heroin. *Id.*, at 842. There was an *oral* stipulation to that effect, but the

---

**3.** *Greene* held that the *Burks* standard applies to state criminal proceedings.

**4.** It is this writer's thought that the instant case is somewhat inconsistent with *Humason v. State*, 729 S.W.2d 694 (Tex.Cr.App.1987). There the search and seizure question was written on by the majority while ignoring the fact that the

stipulations did not comply with Article 1.15, V.A.C.C.P. Here we write on the Article 1.15 question.

**1.** Emphasis in original opinion; all other emphasis is mine throughout unless otherwise indicated.

record on direct appeal did not contain a written waiver and consent prescribed by Article 1.15, V.A.C.C.P. A majority of the en banc Court held:

> "Since the State did not follow the requirements of Article 1.15, V.A.C.C.P., the stipulation may not be considered and *the evidence is insufficient to support the convictions.* [four citations omitted]."

*Id.,* at 843. The State pointed to certain live testimony of a police officer, but the Court found that the officer was not qualified to testify a substance is heroin. *Ibid.* Accordingly, having looked for other evidence and finding none, as was routinely done in those days (e.g., *Hughes v. State,* 533 S.W.2d 824 (Tex.Cr.App.1976); *Rangel v. State,* 464 S.W.2d 858 (Tex.Cr.App.1971); *Elder v. State,* 462 S.W.2d 6 (Tex.Cr.App. 1971)), the Court reversed the conviction for evidentiary insufficiency and remanded the cause, saying nothing at all about "trial error" by the trial court. *Ibid.*

On remand Duran was convicted again. Then along came *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), which this Court accurately predicted would be applied retroactively. *Ex parte Mixon,* 583 S.W.2d 378 (Tex.Cr.App.1979). On their authority Duran applied for a postconviction writ of habeas corpus to "relieve him from conviction on the re-trial which followed our remand," *Ex parte Duran,* supra, at 684, in that the Court had found on direct appeal that evidence was insufficient to support his conviction.

Recognizing its predicament and "manifestly struggling to avoid granting relief," *Ex parte Aaron,* supra, the Court first opined that *"Burks* and *Greene* do not *clearly require* that the relief sought be granted," and then set the scene, *viz:*

> "That we used the words 'the evidence is insufficient to support the conviction' (552 S.W.2d at 843) in our earlier opinion, a year before *Burks* and *Greene* were decided, does not control the correct analysis of this case. The words are not a magic phrase which produces automatically results."

*Ex parte Duran,* supra, at 684.[2] Next it examined *Burks* and *Greene* and reviewed some of the proof offered and admitted on his trial before the court—*on oral stipulation and without objection on the part of defendant. Id.,* at 684–685. With that done, the Court turned to resolution of the problem.

First the Court said, "As we have already held on appeal, *the trial court erred in accepting this stipulation." Id.,* at 685.[3] Continuing in that vein, the Court believed the trial court "should have ruled that the stipulation was improper without defendant's written waiver and consent," and speculated that had the trial court "made the proper ruling, the defendant might have given his written waiver and consent," but if he "refused" the State would then be put to proving the evidentiary matter "by other testimony or evidence." *Id.,* at 685–686.[4] In the event, though "the proper ruling" was not made, "it would not have been correct for the trial court to have directed a verdict of not

2. Nonetheless, the reality of the matter is that the Court *did* reverse the conviction in *Duran* for insufficient evidence—not "trial error"—as demonstrated *ante.* See *Burks,* supra, 437 U.S. at 16, n. 10, 98 S.Ct. at 2150, n. 10.

3. As I have pointed out, the Court did not so hold in terms that "the trial court erred." Rather, it held that since the stipulation may not be considered as evidence and other testimony lacked probative value, the State failed to prove the substance was heroin; thus the evidence was insufficient to support the conviction, and reversal followed automatically. See *ante,* pp. 700–701 and note 2.

4. Of course, the State was already "put to proving" that essential element of the offense it alleged, and the trial court had not been been called on by either party to make any ruling. Compare *Greene v. Massey,* supra, 437 U.S. at 21, 98 S.Ct. at 2153, and see *Sosa [and Greene] v. State,* 215 So.2d 736, 742 (Fla.1968). Indeed, both were in full agreement that the stipulation and exhibits, including lab report and "the heroin" itself, be received in evidence. Thus the parties "seemed satisfied at the time to assist in making a record of evidence on which appellant would get 'a fair adjudication of his guilt *free from error.'"* *Ex parte Aaron,* supra, n. 1. (emphasis in original).

guilty on the basis of insufficient evidence" since the State "had not yet rested." *Id.*, at 685. (The State rested right after the last stipulation was made, but the defense proceeded to put on its case.)

Having thus put the burden on a trial court to reject *sua sponte* a proffered stipulation between the parties, the Court believed itself able to say that the situation in *Duran* is "different" from *Burks*, in that error on the part of the trial court in the latter "was in failing to grant a motion for new trial which was based on insufficiency of the evidence," whereas in *Duran* "the basic error was not failure to recognize, after the State had rested, that the evidence was insufficient; it was error in admitting evidence," and perforce "trial error" rather than "jeopardy error." *Id.*, at 686.[5]

Thus adjusting clear findings and holding of *Duran v. State* to fit its own analysis of *Burks* and *Greene* evinces that the *Ex parte Duran* Court was determined to convert what was reversal for evidentiary insufficiency into reversal for "trial error." Quoting one paragraph in *Burks* concerning "trial error" and appropriating the term for its own purposes, it does not even attempt to convey an understanding of the problems being addressed by the Supreme Court in those two opinions.

What the Supreme Court resolved is "the question of whether an accused may be subjected to a second trial when conviction in a prior trial was reversed by an appellate court solely for lack of sufficient evidence to sustain the jury's verdict." *Burks*, 437 U.S. at 2, 98 S.Ct. at 2143. First it reviewed developments in lower courts through the finding of evidentiary insufficiency on a sanity issue by the Court of Appeals for the Fifth Circuit and its ordered remanding the cause for determination of whether to enter a directed verdict of acquittal or a new trial—in light of at least two groups of past decisions of the Supreme Court. One it called "the *Bryan-Forman* line." [6] That line produced the following proposition:

> "A defendant who *requests* a new trial as one avenue of relief may be required, to stand trial again, even when his conviction was reversed due to failure of proof at the first trial."

*Burks*, at 10, 98 S.Ct. 2146.[7] The other group of decisions deal more with traditional notions of jeopardy prohibiting a second trial to allow the prosecution another opportunity to supply evidence it failed to muster in the first one, the proposition that failure of proof in a trial court calls for an acquittal, and the view that it should make no difference that the reviewing court rather than the trial court determined evidence to be insufficient, first suggested by Justice Douglas concurring in *Sapir v. United States*, 348 U.S. 373, 374, 75 S.Ct. 422, 423,

---

**5.** "We think that this basic error, upon which our earlier reversal rested, was therefore trial error. Properly construed, our holding was not that the State had failed to prove its case, *but that it had been permitted erroneously to prove its case through incorrect receipt of evidence.* Cf. *Burks*, 437 U.S. at 15, 98 S.Ct. 2141, quoted above. A reversal for such trial error as was committed in this case is not tantamount to a holding by this Court that a directed judgment of acquittal should have been entered. It was a holding that the applicant should have a fair readjudication of his guilt free from error. For this reason, our earlier reversal was not one that would bar a re-trial because of the application of the double jeopardy clause in *Burks* and *Greene*." *Id.*, at 686.

**6.** "Petitioner's contention that to require him to stand trial again would be to place him twice in jeopardy is not persuasive. He sought and obtained reversal of his conviction assigning a number of errors on appeal, including denial of his motion for judgment of acquittal. '.... [W]here the accused successfully seeks review of a conviction, there is no double jeopardy upon a new trial. [citations omitted]." *Bryan v. United States*, 338 U.S. 552, 560, 70 S.Ct. 317, 321, 94 L.Ed. 335 (1950).

"It is elementary in our law that a person can be tried a second time for an offense when his prior conviction for that same offense has been set aside by his appeal. [citing *United States v. Ball*, supra]. .... Even though petitioner may be right in his claim that he did not request a new trial with respect to the portion of the charge dealing with the statute of limitations, still his plea of double jeopardy must fail. Under 28 U.S.C. § 2106, the Court of Appeals has full power to go beyond the particular relief sought." *Forman v. United States*, 361 U.S. 416, 425, 80 S.Ct. 481, 486, 4 L.Ed.2d 412 (1960).

**7.** Emphasis by the Supreme Court.

99 L.Ed. 426 (1955). *Burks*, 437 U.S. at 10–11, 98 S.Ct. at 2147.

Upon close examination of the *Bryan-Forman* precedents and holdings the Supreme Court was persuaded that "they have not properly construed the [Double Jeopardy] Clause, and accordingly should no longer be followed." *Burks*, supra, at 12, 98 S.Ct., at 2147. It further found that *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896) "provides a logical starting point for unraveling the conceptual confusion" arising from *Bryan v. United States*, supra, and its progeny, including *Forman v. United States*.

In *Ball* accused obtained a reversal of his first conviction due to a defective indictment. It was therefore "based not on insufficiency of evidence but rather on trial error, i.e., failure to dismiss a faulty indictment," as were the cases it cited. *Burks*, 437 at 14, 98 S.Ct., at 2148. The problem perceived by the Supreme Court was that cases decided since *Ball* "do not distinguish between reversals due to trial error and those resulting from evidentiary insufficiency" and the Supreme Court, seeing that failure as "contribut[ing] substantially to the present state of confusion existing in this area of the law," thought "it is important to consider carefully the respective roles of these two type of reversals in double jeopardy analysis." *Id.*, at 15, 98 S.Ct. at 2149.

Accordingly, the Supreme Court abstractly compared the respective roles: first, "trial error" in the passage quoted by the Court in *Ex parte Duran*, supra, at 684, then evidentiary insufficiency. On the issue being decided, see *ante*, at p. 696, the Court concluded:

"In our view it makes no difference that a defendant has sought a new trial as one of his remedies, or even as the sole remedy. It cannot be meaningfully said that a person 'waives' his right to a

judgment of acquittal by moving for a new trial. * * * * Since we hold today that *the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient*, the 'just' remedy available for that court is the direction of a judgment of acquittal. To the extent that our prior decisions suggest that by moving for a new trial, a defendant waives his right to a judgment of acquittal on the basis of evidentiary insufficiency, those cases are overruled."
*Id.*, 437 U.S. at 17–18, 98 S.Ct. at 2150–2151.

Had *Burks* and its application to the States by *Greene* been recognized as the law then extant, that the Court should have directed a judgment of acquittal in *Duran v. State* cannot be gainsaid. Since it was not, the Court did that which it always had when an appellant prevailed on appeal in such cases—remand to the trial court. Faced with *Burks* and *Green*, however, the Court sought to justify the remand by equating what it said in retrospect was the holding in *Duran* with "dictum" of the Supreme Court in remanding *Greene*, supra. *Ex parte Duran*, at 686.

In *Greene*, the Supreme Court applied the "standard" of *Burks* to the States. *Id.*, 437 U.S. at 24, 98 S.Ct. at 2154. However, it was unable to reverse the judgment of the courts below and grant appropriate relief because "the situation is confused" in that while the *per curiam* opinion in *Sosa [and Greene] v. State*, 215 So.2d 736 (Fla. 1968), "leaves no room for interpretation by us" other than the Florida Supreme Court had found evidence insufficient to convict in the first trial, *Greene*, supra, 437 U.S. at 24–25, 98 S.Ct. at 2154, (and reversed the judgments and "remanded for a new trial," *Sosa*, at 737), there was also a concurring opinion subject to different interpretations.[8] The Supreme Court

---

8. An examination of that concurrence in *Sosa*, supra, reveals that the hearsay testimony at issue was given by Mary Kane, a rebuttal witness for the State, She was allowed *"over objection"* to testify as to statements made by her to an FBI agent. In turn, the FBI agent was permitted to testify to what Kane and, *"over objection,"* what

another witness, Mae Turner, had told him. *Id.*, at 742–743. In the Florida Supreme Court Sosa and Greene contended "that the trial court erred in admitting these extrajudicial statements of the witnesses into evidence." *Ibid.* After an extensive discussion of applicable law the concurrence concluded:

thought the concurrence could be viewed at least two ways: one involving only trial error;[9] the other, that those three judges were of the opinion that "once the inadmissible hearsay was discounted, there was insufficient evidence to permit the jury to convict." *Greene*, 437 U.S. at 24–26, 98 S.Ct. at 2154–2155. Eschewing any indication that it considered such a reversal as "trial error," the Supreme Court cautioned that it expressed no opinion "as to the double jeopardy implications of retrial following such a holding," *id.*, n. 9. Given that tiny opening, this Court equated its "holding" in *Duran* with the latter view of the concurring opinion in *Sosa*, supra. *Ex parte Duran*, at 684–685.

As matters would finally turn out, however, the Supreme Court proved to be

> "When, as in the present case, the extrajudicial statements contain references to additional and extrinsic facts whose potential probative force is highly incriminating and critical to the establishment of an ultimate fact in dispute, we believe that the admission of such extrinsic portions of the extrajudicial statements constitutes reversible error."

*Id.*, at 745. Accordingly, for reasons stated in their opinion the concurring judges opined that the judgments should be reversed and remanded for a new trial "so we have agreed to the Per Curiam order doing so." *Id.*, at 746.

**9.** One interpretation was that "the three concurring judges were concerned simply with *trial error* and joined in the remand solely to afford Greene and Sosa a fair error-free trial—*even though they were satisfied that the evidence was sufficient to support the verdict.* A reversal grounded on such a holding, of course, would not prevent a retrial." *Greene*, 437 U.S. at 26–27, 98 S.Ct. at 2155. *Ex parte Duran* does *not* mention that interpretation of reversal for "trial error."

**10.** Following its suggestion that the Court of Appeals was free to certify unresolved questions of state law to the Florida Supreme Court, *Greene*, 437 U.S. at 27, 98 S.Ct. at 2155, the Fifth Circuit panel did just that in *Greene v. Massey*, 595 F.2d 221 (CA5 1979). Although all were not answered in *Greene v. Massey*, 384 So.2d 24 (Fla 1980), the Florida Supreme Court made clear that its per curiam opinion became the majority opinion when three specially concurring members joined in the per curiam; that the special concurring opinion had no precedential value and cannot serve to condition or limit the concurrence in the per curiam opinion by the three who joined in that special concurring opinion; that the majority per curiam opinion "constitutes the only opinion of the Court." *Id.*, at 27.

wrong in several interpretations of the situation.[10] The "confusion" that prompted those dicta dissolved on remand and certification. With its underpinnings thus removed *Ex parte Duran* must fall. See *Greene v. Massey*, 706 F.2d, at 552–553.

The essence of *Burks*, and hence *Greene*, was reprised by the Supreme Court in *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), *viz:*

> "We considered in Burks the question 'whether an accused may be subjected to a second trial when conviction in a prior trial was reversed by an appellate court solely for lack of sufficient evidence to sustain the jury's verdict.' [cites to *Burks* omitted throughout]. We held that a reversal 'due to failure of proof at

However, after reversal Greene and Sosa sought a writ of prohibition to bar retrial and their jeopardy position was rejected by the trial court and a district court of appeal in *Sosa v. Maxwell*, 234 So.2d 690 (Fla.2d CDA 1970), upon its own construction of the original per curiam opinion: reversal not for insufficient evidence but "based on a finding that the evidence, though technically sufficient, is so tenuous as to prompt an appellate court to exercise its discretion and, in the interest of justice, grant a new trial." When the Florida Supreme Court declined to review that construction, the decision of the district court "became the law of the case with respect to the jeopardy claim;" thus on appeal from conviction on retrial the district court of appeal "properly declined to reconsider the same double jeopardy claim" in *Sosa v. State*, 302 So.2d 202 (Fla. 4th DC 1974). As far as Florida courts were concerned the decision "interpreting our original opinion ... is controlling ... with respect to the double jeopardy issue," *Greene*, 384 So.2d at 27.

Thereafter, in *Greene v. Massey*, 706 F.2d 548 (CA5 1983), the Fifth Circuit panel sorted it all out. With intervening *"Tibbs* litigation" finally terminated, the majority found that reversal in the original per curiam opinion had been "based on *evidentiary weight and 'the interests of justice,'*" *id.*, at 557. Therefore, the Double Jeopardy Clause was not offended by the opinion of the district court of appeal denying writ of prohibition and ordering a retrial. *Id.*, at 554, n. 13. [See *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); see also *Hill v. State*, 719 S.W.2d 199 (Tex.Cr.App.1986) (Dissenting Opinion).] Accordingly. the Fifth Circuit denied habeas relief and affirmed the district court The Supreme Court denied certiorari, 464 U.S. 1046, 104 S.Ct. 718, 79 L.Ed.2d 180 (1984).

trial,' where the State received a 'fair opportunity to offer whatever proof it could assemble,' bars retrial on the same charge. We also held that it makes 'no difference that the *reviewing* court, rather than the trial court, determined the evidence to be insufficient,' (emphasis in original), or that 'a defendant has sought a new trial as one of his remedies, or even as the sole remedy.' "

*Id.*, at 42–43, 101 S.Ct., at 972.

Applying *Burks* in *Hudson v. Louisiana*, supra, the opinion points out:

"The Louisiana Supreme Court recognized that the trial judge granted the new trial on the ground that the evidence was legally insufficient. The Supreme Court described the trial judge's decision in these words: '[T]he trial judge herein ordered a new trial pursuant to LSA C Cr P art 851(1) solely for lack of *sufficient evidence* to sustain the jury's verdict. . . .' (emphasis in original). *This is precisely the circumstance in which Burks precludes retrials.* Nothing in Burks suggests, as the [Louisiana] Supreme Court seemed to believe, that double jeopardy protections are violated only when the prosecution has adduced no evidence at all of the crime or an element thereof."

*Id.*, at 43, 101 S.Ct., at 972.

Finally, the Supreme Court agreed with the Louisiana Supreme Court that the fact that a trial judge had found evidentiary insufficiency is no different in principle announced in *Burks* and followed in *Greene* when an appellate court does.

Again, as in *Burks* and *Hudson v. Louisiana*, had it been known the same principle would have precluded retrial in *Duran*. What happened during trial of accused in *Duran* was variously characterized.[11] However, he *did not object* to the procedure, the court made *no ruling* and the fact of the matter is that stipulated evidence and other testimony produced by the prosecution and relied on by the trial court were legally insufficient to support of a finding of guilt. That was his precise contention on appeal, and the Court found that State failed to prove "the brown powdered substance was heroin," *Duran*, at 843. He was entitled to, and the Court should have ordered, an acquittal on his postconviction application for habeas corpus.[12]

*Ex parte Duran* was, therefore, wrongly decided; it and progeny should be overruled. Because the majority does not, but instead follows the former to allow the State "another bite at the apple," I respectfully dissent.

TEAGUE, J., joins.

---

**11.** In *Duran* the Court said "the State did not follow the requirements of Article 1.15;" in *Ex parte Duran* the Court said the trial court "should have ruled that the stipulation was improper," and without such ruling the State "had been permitted to erroneously to prove its case through incorrect receipt of evidence." See *ante*, pp. 695–696.

The first case to construe Article 1.15 after the legislative revision in 1965 and amendment in 1967 is *Rodriguez v. State*, 442 S.W.2d 376 (Tex. Cr.App.1969). The offense is theft, the plea not guilty and the issue is sufficiency of evidence to prove want of consent by owner. On original submission two judges opined Article 1.15 is not mandatory where the plea is not guilty; two judges dissented. On rehearing a majority held otherwise and then posited:

"If the stipulation is sufficient there is sufficient evidence to support the *conviction*, if the stipulation is not in accord with the legal requirements of art. 1.15 then there is insufficient evidence to support the *conviction*." *Id.*, at 385 (emphasis in original). Finding a failure to comply with Article 1.15, and thus the testimony at issue inadmissible, since there was no other evidence on point the Court held the State had failed to prove an essential element of the offense charged and, therefore, reversed the judgment and remanded the cause. *Ibid.*

**12.** *Ex parte Duran* never suggests that the State had not been given "one fair opportunity to offer whatever proof it could assemble," *Hudson v. Louisiana*, supra; *Burks*, at 16, 98 S.Ct. at 2150. Indeed, the Court could not with straight face, for in *Duran* the Court found the State had proved the substance was heroin in another case in August, but failed to prove that element in the case under consideration in October.